IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENCINO GARDENS APARTMENTS, INC.,

        Plaintiff,

vs.                                                                 Civ. No. 16-0055 MCA/KK

GALEN J. SMITH,

        Defendant.

## ORDER ON MOTION FOR REHEARING

This case is before the Court upon Defendant's *Motion for Rehearing on March 28, 2016 Memorandum Opinion and Order Remanding Case and Awarding Attorney Fees* [Doc. 22]. By his Motion, Defendant seeks reconsideration of the Court's *Memorandum Opinion and Order* [Doc. 18]. Defendant raised the issue of disqualification and this will be addressed first.

**DISQUALIFICATION**

Of particular concern to me is Defendant's assertion that the assignment of this case to me denied Defendant an impartial tribunal [Doc. 22 at 2], an assertion that implicates my judicial integrity. At the time that I ruled on Plaintiff's motion to remand, I had absolutely no present recollection that over fifteen years ago Defendant had opposed my confirmation as a United States District Judge (if indeed that is something he did). Similarly, at the time I decided the motion to remand in this case, I had absolutely no present recollection of accusations made by Defendant as an affiant in a case, *Roberts v.*

1

*Hartz*, Civ. No. 01-1262 (D.N.M.) [Doc. 51 at 6-12], briefly assigned to me over a dozen years ago.[1]  In short, I decided Plaintiff's motion to remand based solely on its substance and not because of personal animus toward Defendant.  *Cf. United States v. Pappert*, 1 Fed. App'x 767 (10th Cir. 2001) (holding that district judge had no duty to disqualify herself pursuant to 28 U.S.C. § 455(b)(4) where she was unaware at time of challenged ruling of facts giving rise to conflict of interest).

Of course, due to Defendant's motion for rehearing, I now am conscious of Defendant's purported objections to my confirmation and his complaints about my performance as a judge of the New Mexico Court of Appeals.  Thus, I must consider whether this present awareness of Defendant's extrajudicial remarks disqualifies me from ruling on Defendant's motion for rehearing.  The principles applicable to the issue of disqualification have been  distilled by District Judge Jenkins in his Memorandum Opinion & Order in *Blakely v. USAA Casualty Insurance Co.*, 2012 WL 6115625 (D. Utah Dec. 10, 2012).  I have carefully considered those principles in deciding whether I must disqualify myself from ruling on Defendant's motion for rehearing.

As an initial matter, Defendant's attempt to disqualify me is untimely.  *See Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970) (holding that plaintiff's affidavit of disqualification filed after district court ruled against plaintiff "comes too late"); Singer v. Wadman, 745 F.2d 606 (10th Cir. 1984) (holding plaintiffs' motion to disqualify untimely where it was filed a year after the complaint was filed and after the district court

---

[1] I do not recall the reason that this case was reassigned.  The defendant, Deborah Hartz, was the then wife of Harris Hartz, my friend and colleague on New Mexico Court of Appeals.  I think it most likely that I asked that the case be reassigned because Deborah Hartz was the defendant, and that Defendant's accusations were immaterial.

2

had made rulings adverse to plaintiffs).  "The most egregious delay—the closest thing to per se untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."  *Blakely*, 2012 WL 6115625 at *1 (quoting *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998)).  Here, Defendant necessarily was fully aware of the facts he now relies upon to claim bias, yet he sat on those facts until after I ruled adversely to him.

28 U.S.C. § 455(a) imposes on me a continuing duty to disqualify myself "in any proceeding in which [my] impartiality might reasonably be questioned."  Whatever Defendant may have said over fifteen years ago in his communications with the Senate,[2] his remarks had no effect on my confirmation, as my confirmation by a unanimous vote of the Senate demonstrates.

His complaints about my performance as a judge of the New Mexico Court of Appeals appear to be early manifestations of an ever-widening delusion implicating not just myself, but every judge who has rejected Defendant's positions.  Defendant expands his accusation of me of being biased based on his remarks from over fifteen years ago[3] to include intentional discrimination[4] in an attempt to prevent him from fighting my alleged

---

[2] I have no present recollection of ever having seen, or having been made aware of, the materials that Defendant purportedly submitted in opposition to my confirmation.
[3] "U.S. District Judge M. Christin[a] Armijo bears a personal grudge of extrajudicial origin against Defendant Smith arising from his personally lobbying the United States Senate seeking denial of confirmation of her appointment to the post she now holds." See *Encino Gardens Apartments, Inc. v. Smith*, Civ. No. 16-0055 MCA/KK [Doc. 22 at 2]. "The Court needs to back out everything and start over with an unbiased judge." *Encino Gardens Apartments, Inc. v. Smith*, Civ. No. 16-0055 MCA/KK [Doc. 22 at 17].
[4] "the substance of the MOO is a species of fraud typical of discrimination against *pro se* litigants." *Encino Gardens Apartments, Inc. v. Smith*, Civ. No. 16-0055 MCA/KK [Doc. 22 at 1].

racketeering and other alleged misconduct.[5] Defendant further extends his belief to include accusations of criminal conspiracy against me, the Honorable Judith C. Herrera and others.[6] Not content with mere accusations, Defendant, in what appears to be an attempt to remove the Honorable Judith C. Herrera and me from the bench, "instituted criminal complaints" with the Albuquerque office of the Federal Bureau of Investigation.[7] Not satisfied with the FBI's response,[8] Defendant states he "may have to dismantle the Justice Department."[9] Any judge who regularly deals with *pro se* litigants eventually encounters parties such as Defendant, who imagine themselves to be the targets of a judicial conspiracy. *See Smith v. Bender*, 350 Fed. App'x 190 (10th Cir. 2009); *Switzer v. Berry*, 198 F.3d 1255 (10th Cir. 2000).

---

[5] Judge Armijo stands to benefit personally from Defendant, a person who is aged and multiply disabled, being deprived of his home, which is his base of operation for litigation and other activities associated with fighting racketeering and other misconduct of hers and other judicial officers and employees of the court over which she is Chief Judge." See *Encino Gardens Apartments, Inc. v. Smith*, Civ. No. 16-0055 MCA/KK [Doc. 22 at 2-3].
"This is . . . part of the psychological warfare corrupt state and federal judges wage on persons who appear without a lawyer to compromise their rights and interests." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 5].

[6] "It only signifies one step in the injury intended to Defendant by the criminal conspiracy activities of two Article III judges, the Metropolitan court judge, the Plaintiff and [Plaintiff's attorney]; mail fraud, extortion, threatening a federal witness, racketeering." *Encino Gardens Apartments, Inc. v. Smith*, Civ. No. 16-0055 MCA/KK [Doc. 24 at 8].

[7] "It is Plaintiff's contention two federal judges have engaged in criminal acts from the bench to cause Plaintiff to be evicted . . . ." See *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 8].
"Smith has instituted criminal complaints against U.S. District Judges M. Christin[a] Armijo and Judith C. Herrera for mail fraud, extortion and racketeering." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 4].
"Plaintiff has instituted a complaint with the Federal Bureau of Investigation against U.S. District Judges Judith C. Herrera and M. Christin[a] Armijo for mail fraud, extortion and racketeering." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 9].

[8] "Naturally the FBI responded by attempting to dissuade Plaintiff from pursuing the matter, in direct contravention of 18 U.S.C. § 1512(b)(3)." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 9].
"As usual, when Plaintiff gets near anything governmental it begins to ooze corruption; the Albuquerque office of the Federal Bureau of Investigation engaged in its pattern of misleading conduct designed to discourage reporting possible federal criminal offenses that the FBI does not wish to investigate, in direct contravention of 18 U.S.C. § 1512(b)(3)." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 4-5].

[9] "So Plaintiff may have to dismantle the Justice Department at the same time [he] takes on corruption in the federal judiciary." *Smith v. Monarch Properties*, Civ. No. 15-0054 JCH/SMV [Doc. 10 at 10].

Defendant's objections and complaints may be evidence of his animosity towards me, but they do not establish that I bear animosity towards him.  *Cf. United States v. Evans*, 262 F. Supp. 2d 1292, 1295-96 (D. Utah 2003).   A reasonable observer would recognize Defendant's attacks on my judicial integrity as garden variety calumny by a disgruntled litigant.   Judges routinely shrug off this type of retaliation by litigants as an unpleasant, but unavoidable, incident of their office.  Indeed, "[t]here is a 'well established judicial rejection of a rule that would permit a litigant or an attorney to disqualify a judge by criticizing him.'"  *Id.* at 1296 (footnote omitted).

To summarize, I am not actually biased against Defendant as the result of unfounded and inconsequential attacks on my conduct as a judge made by Defendant over fifteen years ago.   Further, I find that a reasonable observer informed of all the circumstances would not harbor doubt about my ability to impartially decide Defendant's motion for rehearing based upon the law and the facts.  *United States v. Sealander*, 91 F.3d 160 * 19 (10th Cir. 1996) (unpublished opinion) (rejecting claim that trial judge's impartiality was called into question by criminal defendant's filing of civil lawsuit accusing judge of racketeering, obstruction of justice, conspiracy to murder defendant, kidnaping and obstruction, and other criminal conduct).

**MOTION FOR REHEARING**

Turning to the merits of Defendant's motion for rehearing, I conclude that it must be denied.

The order remanding Defendant's case was entered on March 29, 2016.  [Doc. 19] That same date, the clerk of this Court mailed to the Bernalillo County Metropolitan Court

5

a copy of the remand order together with the entire case file.  [Doc. 20] I therefore lack jurisdiction to reconsider the remand order to the extent removal was predicated on the failure of federal question jurisdiction.  *Miller v. Lamberth*, 443 F.3d 757, 759-60 (10th Cir. 2006).

Defendant's removal petition also referred to 28 U.S.C. § 1443.  The proscription of review of remand orders set out in § 1447(d) does not apply to § 1443 removals.  *Miller*, 443 F.3d at 760; *Taos County Magistrate Court v. Currier*, 625 Fed. App'x 358, 360 (10th Cir. 2015).

Subsection 1443(1) "allows removal to address the violation of a right to *racial* equality that is unenforceable in state court."  *Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005) (emphasis added).  Defendant claims that the provisions of the New Mexico Owner-Resident Relations Act, NMSA 1978 §§ 47-8-1, *et seq.*, providing for expedited disposition of owner petitions for restitution of premises, § 47-8-43(a)(1), discriminates against  tenant-defendants, preventing them from asserting federal rights conferred by 24 C.F.R., part 247.  But these regulations are not on their face concerned with guaranteeing racial equality; rather, they establish substantive and procedural standards applicable to tenants without regard to race.  Defendant also claims that he is disadvantaged by comparison to tenants residing outside Bernalillo County by the New Mexico Legislature's designation of the Bernalillo County Metropolitan Court as a court of record in civil actions.  Broad assertions of a denial of equal protection do not plausibly establish that Defendant has been deprived of rights "under a federal law providing for specific civil

6

rights stated in terms of racial equality." *See Miller*, 443 F.3d at 761-62 (quoting *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975)).

Section 1443(2) "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824 (1966)). Defendant has not made out a plausible claim that he acted as a federal officer or agent or that he assisted a federal officer or agent in enforcing a federal law providing for equal civil rights.

**CONCLUSION**

To summarize, I lack jurisdiction to reconsider the remand order to the extent it relied upon the absence of subject matter jurisdiction, and although I have jurisdiction to reconsider the remand order to the extent removal was predicated on § 1443, I conclude that the record does not support removal under either subsection of § 1443. Lastly, because Defendant removed this case without objectively reasonable grounds for removal, an award of attorney's fees to Plaintiff is warranted. *Topeka Housing Auth. v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005).

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant's *Motion for Rehearing on March 28, 2016 Memorandum Opinion and Order Remanding Case and Awarding Attorney Fees* [Doc. 22] is **denied**.

7

**So ordered this 31st day of March, 2017.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge